ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| JOSEPH W. HALL, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 110-065 |
| | ) | |
| SHEILA OUBRE, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner filed the above-captioned petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition is currently before the Court on Respondent's motion to dismiss the petition as untimely. (Doc. no. 16.) Petitioner opposes the motion. (Doc. no. 20.) For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that the motion to dismiss be **GRANTED**, that this petition be **DISMISSED**, and that a final judgment be **ENTERED** in favor of Respondent.

I.  **BACKGROUND**

On August 15, 2003, Petitioner was convicted of child molestation in the Superior Court of McDuffie County and received a sentence of 20 years, 13 years confinement. (Doc. no. 17, Ex. 2, p. 1.) Petitioner appealed his conviction to the Georgia Court of Appeals, which was affirmed on April 8, 2005. (Id., Ex. 1, p. 1.) Petitioner next filed a state habeas petition in the Superior Court for Tattnall County.[1] (Id., Ex. 3, p. 1.) In his

---

[1] As discussed more thoroughly below, the date on which Petitioner's state habeas petition was filed is the crux of the issue of whether Petitioner's current federal habeas

state habeas petition, Petitioner made several claims of error, including ineffective assistance of trial and appellate counsel, prosecutorial misconduct, and abuse of discretion by the trial judge. (Id at 4.) The state habeas court denied relief on October 19, 2009 (Doc. no. 17, Ex. 4, p.7), and the Georgia Supreme Court denied his application for a certificate of probable cause to appeal the state habeas court's ruling on March 29, 2010 (id., Ex. 5).

Petitioner then commenced the instant action in the Middle District of Georgia. However, because the petition challenges a conviction in the Superior Court of McDuffie County, the Honorable Claude W. Hicks, Jr., United States Magistrate Judge, transferred the case to this District on May 20, 2010. (See doc. no. 7.) On May 28, 2010, this Court recommended that Petitioner's motion to proceed *in forma pauperis* ("IFP") be deemed moot and that his petition be dismissed as untimely based on the information that Petitioner had provided in his petition which indicated that his state habeas petition had been filed some time in 2008. (Doc. no. 10.) Petitioner filed an objection demonstrating that his state habeas petition had been filed on April 3, 2006 in the Superior Court for Tattnall County, but was later transferred to the Superior Court for Washington County due to Petitioner's transfer from Smith State Prison to Washington State Prison. (Doc. no. 12, p. 2; Ex., pp. 15-16.)[2] This Court issued an Order vacating the previous Report and Recommendation, granting Petitioner's motion to proceed IFP, and ordering the Respondent to file an answer. (Doc. no. 13.)

---

petition is time-barred. (See doc. nos. 16, 20.)

[2]The Court also utilizes information from the previous objections filed by Petitioner in reaching its decision to recommend dismissal of the instant petition.

2

Respondent now argues that the above-captioned petition should be dismissed as time-barred under 28 U.S.C. § 2244(d) by applying Georgia law, which states that the "mailbox rule" does not apply to the filing of initial state habeas petitions. (Doc. no. 16, Att. 1, pp. 6-7.) Petitioner contends that the "mailbox rule" should be applied to the filing of his state habeas petition, and therefore, the above-captioned petition should not be dismissed. (Doc. no. 20.) The Court resolves the dispute as follows.

**II. DISCUSSION**

Effective April 24, 1996, the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, amended the statute governing habeas corpus petitions for state prisoners seeking relief in the federal courts. In pertinent part, 28 U.S.C. § 2244 provides:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent

3

judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

### A.     Finality of Petitioner's Conviction

Under 28 U.S.C. § 2244(d)(1)(A), a judgment becomes final upon "the conclusion of direct review or the expiration of the time for seeking such review." Petitioner filed a direct appeal, and the Georgia Court of Appeals affirmed Petitioner's conviction on April 8, 2005.[3] Thereafter, Petitioner had ten (10) days, pursuant to the Georgia Court of Appeals's Rule 37, to file a motion for reconsideration.[4] Pursuant to the Georgia Supreme Court's Rule 38, Petitioner had ten (10) days in which to either move for reconsideration or to file a notice of intent to apply for certiorari to the Georgia Supreme Court.[5] Petitioner did neither. Thus, for the purpose of determining the timeliness of the

---

[3]The instant petition (doc. no. 4, p. 2) and a prior Report and Recommendation (doc. no. 10, p. 2) both cite the date that the Georgia Court of Appeals confirmed Petitioner's conviction as April 28, 2005. As stated below in note 4, the date that the rendition of judgment or dismissal occurs starts the clock for the deadline to submit a motion for reconsideration. The date of judgment in this case was April 8, 2005. (See doc. no. 12, Ex., p. 13.) April 28, 2005 was the date of remittitur (id.), which, according to the Georgia Court of Appeals Rule 39(a), does not occur until "after the expiration of 10 days from the date of judgment. . . ."

[4]Georgia Court of Appeals Rule 37(b) provides in pertinent part that, "Motions for reconsideration must be filed within 10 days from the rendition of the judgment or dismissal."

[5]Georgia Supreme Court Rule 38 (1) provides:

Compliance with the requirements of this rule governing petitions for certiorari is mandatory. Notice of intention to apply for certiorari shall be given to the Clerk of the Court of Appeals within 10 days after the date of entry of judgment or the date of the disposition of the motion for reconsideration, if one is filed. A copy of the notice of intent is not to be filed in the Supreme Court.

4

above-captioned petition, Petitioner's conviction became final on April 18, 2005.[6]

### B. Application of the Statute of Limitations

Under the AEDPA, Petitioner had one year from April 18, 2005, to file his federal habeas corpus petition. However, the Court recognizes that according to the provisions of 28 U.S.C. § 2244(d)(2), the one-year statute of limitations does not run while a properly filed application for state post-conviction or other collateral review is pending in state court. Jones v. Nagle, 349 F.3d 1305, 1307 (11th Cir. 2003). In this case, the heart of the dispute centers around the date that Petitioner's state habeas petition was filed. Respondent argues that Petitioner's state habeas petition was filed on April 3, 2006, the date that the petition was received by the state habeas court. (Doc. no. 16, Att. 1, pp. 6-7.) Respondent supports her argument by citing Roberts v. Cooper, 286 Ga. 657, 691 (2010), which held that the "prison mailbox rule" does not apply to the initial filing of a state habeas petition. (Id. at 6.) Respondent goes on to argue that the Court should apply the Georgia view of not applying the "mailbox rule" to initial filings of state habeas petitions because it is a state procedural issue, and federal courts looks to state procedural rules in "determining whether and how a state collateral attack is properly filed" in a federal habeas corpus action. (Id. at 6-7.) Petitioner responds by arguing that Roberts v.

---

[6]O.C.G.A. § 1-3-1(d)(3) states that the computation of time in the Georgia Court System is accomplished by not counting the first day of the time period, but counting the last day. Only when the prescribed time is less than seven (7) days are Saturdays, Sundays and holidays excluded in the computation. Additionally, the section states that if the last day prescribed falls on a Saturday, or Sunday, the party has until the following Monday to "exercise any privilege or discharge any duty." Finally, if the last day falls on a public or legal holiday as listed in O.C.G.A. § 1-4-1, the party will have until the next business day to exercise the privilege or discharge the duty. Using this rule, ten (10) days from April 8, 2005 was April 18, 2005 because that date did not fall on a Saturday, Sunday, or public or legal holiday as listed in O.C.G.A § 1-4-1.

5

Cooper does support the application of the "mailbox rule" to the initial filing of state habeas corpus petitions. (Doc. no. 20.) Respondent has the better argument.

According to the United States Supreme Court in Artuz v. Bennett, 531 U.S. 4 (2000), a petition for habeas corpus or other collateral review is properly filed in a state court when its delivery and acceptance are in compliance with the applicable rules and laws governing filings. Artuz, 531 U.S. at 8. The Court recognizes that the Eleventh Circuit held in Taylor v. Williams, 528 F.3d 847 (11th Cir. 2008), that the "mailbox rule" does apply to the filing of state habeas petitions in Georgia. Taylor, 528 F.3d at 850-551. However, in Roberts, the Supreme Court of Georgia explicitly stated that the "mailbox rule" does not apply to the filing of the state habeas petition itself,[7] and federal courts are bound by the interpretations of state statutes by the state's highest court. See O'Brien v. Skinner, 414 U.S. 524, 531 (1974); see also Missouri v. Hunter, 459 U.S. 359, 368 (1983); Brown v. Ohio, 432 U.S. 161, 167 (1977). As the Supreme Court of Georgia's decision regarding the application of the "mailbox rule" was based on its interpretation of O.C.G.A. § 9-14-52, see Roberts, 286 Ga. at 657-61, the Court follows the decision in Roberts that the "mailbox rule" does not apply to the initial filing of state habeas petitions in Georgia. Accordingly, in the instant case, the Court uses the date the state petition was received by the state habeas court, April 3, 2006, as the date the state petition was filed. Thus, Petitioner waited 350 days from the time that his conviction became final on April 18, 2005, until he filed his state habeas petition. Petitioner's state habeas petition,

---

[7]In Roberts, the Georgia Supreme Court specifically referenced the decision of the Eleventh Circuit in Taylor, but went on to conclude that the "mailbox rule" does not apply to the initial filing of state habeas petitions in Georgia. Roberts, 286 Ga. at 660 n.3.

6

executed on April 3, 2006, tolled the statute of limitations period until March 29, 2010. At this time, Petitioner had two weeks to file his federal habeas petition. However, Petitioner waited 25 days from the date his application for a certificate of probable cause to appeal the denial of his state habeas was denied, March 29, 2010, until May 23, 2010, to execute his federal habeas corpus petition. Therefore, absent some tolling mechanism, the above-captioned petition is time-barred by the AEDPA's one-year statute of limitations.

The AEDPA also describes three other situations which may delay or reset the one-year statute of limitations clock: where there is a newly discovered factual predicate for a petitioner's claim which could not have been discovered earlier through the exercise of due diligence, where the State has created some "impediment" to filing the application, or where the petitioner asserts a right that has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review. 28 U.S.C. § 2244(d)(1)(B)-(D). Here, Petitioner fails to argue, and there is nothing in the record to suggest, that any of these other three situations applies to his case. Accordingly, these provisions do not provide any other valid statutory ground for extending the one-year statute of limitations.

### C.     Equitable Tolling and Claims of Actual Innocence

Of course, the untimeliness of the instant petition under the provisions of the AEDPA may be "excused" if Petitioner demonstrates that he is entitled to equitable tolling. Equitable tolling can be applied to prevent the application of the AEDPA's statutory deadline, if a petitioner can "show '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing."

Lawrence v. Florida, 549 U.S. 327, 336 (2007) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). Nevertheless, equitable tolling is typically applied sparingly, Steed v. Head, 219 F.3d 1298, 1300 (11th Cir. 2000), and is available "only in truly extraordinary circumstances." Johnson v. United States, 340 F.3d 1219, 1226 (11th Cir. 2003). The petitioner bears the burden of proving his entitlement to equitable tolling, Jones v. United States, 304 F.3d 1035, 1040 (11th Cir. 2002), and will not prevail based upon a showing of either extraordinary circumstances or diligence alone; the petitioner must establish both. Arthur v. Allen, 452 F.3d 1234, 1252 (11th Cir. 2006) (citing Pace, 544 U.S. at 418-19).

Moreover, a claim of actual innocence may warrant consideration of an otherwise untimely federal petition. Wyzykowski v. Dep't of Corr., 226 F.3d 1213, 1218-19 (11th Cir. 2000). The Eleventh Circuit has described the actual innocence exception as follows:

> This exception is exceedingly narrow in scope, as it concerns a petitioner's "actual" innocence rather than his "legal" innocence. See Calderon v. Thompson, 523 U.S. 538, 559, 118 S. Ct. 1489, 1502-03, 140 L. Ed.2d 728 (1998); Murray [v. Carrier], 477 U.S. [478,] 495-96, 106 S. Ct. at 2649 (explaining that a "fundamental miscarriage of justice" occurs "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent"). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 851, 867, 130 L. Ed.2d 808 (1995). In addition, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon, 523 U.S. at 559, 118 S. Ct. at 1502-03 (quoting Schlup, 513 U.S. at 324, 115 S.Ct. at 865) (explaining that "[g]iven the rarity of such evidence, in virtually every case, the allegation of
> actual innocence has been summarily rejected" (internal quotation marks omitted)).

Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Here, Petitioner has failed to demonstrate that any extraordinary circumstances, let alone extraordinary circumstances and due diligence on his part, entitle him to equitable

tolling of the statute of limitations. Thus, the Court concludes that there is no basis for equitably tolling the AEDPA's one-year statute of limitations. However, Petitioner does argue that he is actually innocent of the charges against him. (Doc. no. 6, pp. 2-4; doc. no 12, p. 3.) As stated *supra*, Petitioner was convicted of child molestation in the Superior Court of McDuffie County for molesting one of his daughter's friends at a sleep over at Petitioner's house. (Doc. no. 17, Ex. 1, pp. 1-2; Ex. 2, p.1.) Petitioner's argument that his trial and appellate counsel were both ineffective is based upon his assertion that there is a medical report by Doctor Michael G. Molitor, which stated that Petitioner's victim's hymen was intact, and both attorneys failed to introduce the report. (Doc. no. 6, pp. 2-4) The victim testified during the bench trial that Petitioner kissed her while they were alone in his truck, and that after they arrived at Petitioner's house he felt her breasts and inserted his finger into her vagina. (Doc. no. 17, Ex. 1, pp. 1-2.) Petitioner argues that medical report proves his innocence because he could not have performed the actions that the victim testified about at trial, without injuring her hymen. (Doc. no. 6, p. 3.)

Petitioner's argument fails to meet the standard set to establish actual innocence as set forth in Johnson. First, Petitioner does not supply a copy of the medical report, but rather only submits a cursory summary of that report by a law enforcement officer. (Id. at 4.) Second, even if the Court assumes that the medical report says what Petitioner alleges and constitutes "reliable evidence," based on the victim's testimony, the Court finds that it is possible that an intact hymen could be consistent with the victim's testimony. The scientific and medical community, as well as many courts, have recognized that penetration can occur without rupturing the hymen. See Krishan Vij, Textbook of

9

Forensic Medicine and Toxicology 407 (4th ed. 2008) (stating that a "[r]upture of the hymen on first penetration is common but not inevitable because the thin elastic membrane is quite capable of stretching to accommodate penetration by an erect adult penile organ. . . ."); State v. Truman, 187 Wis. 2d 622, 628 (Wis. Ct. App. 1994) (holding that penile penetration that lasted for fifteen minutes would not have necessarily ruptured the victim's hymen). Accordingly, the Court is not persuaded that Petitioner has shown that it is more likely than not that no reasonable juror would have convicted him of the underlying offense of child molestation.

In sum, because (1) the above-captioned petition was filed more than one year after Petitioner's conviction became final, (2) Petitioner has not pointed to any other valid statutory ground for extending the deadline for filing his federal petition, and (3) Petitioner has not satisfied the requirements for equitable tolling, nor has he presented an argument that successfully supports a claim of actual innocence, Petitioner's § 2254 petition is time-barred by the AEDPA's one-year statute of limitations.

III.   CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the motion to dismiss be **GRANTED**, that this petition be **DISMISSED**, and that a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 30th day of December, 2010, at Augusta, Georgia.

_____
W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE